IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHELTER MUTUAL INSURANCE COMPANY,**<br><br>  **Plaintiff,**<br><br>  v.<br><br>**KELLY McGUYER,** individually and on Behalf of all persons entitled to sue and Recover for the wrongful death of Robert Bartholic and as Personal Representative Of the Estate of Robert Bartholic,<br><br>  **Defendant.** | Case No. 2:24-CV-02190-JAR |

### MEMORANDUM AND ORDER

Plaintiff Shelter Mutual Insurance Company filed this declaratory judgment action seeking a determination that it did not breach its implied duties of reasonable care and good faith in handling Defendant Kelly McGuyer's claims arising from a June 7, 2020 motor-vehicle collision involving Plaintiff's insured, Raul Martinez, that resulted in the death of Robert Bartholic, and that Plaintiff's conduct did not cause the parties to fail to settle those claims before execution of their settlement agreement. This matter is now before the Court on Plaintiff's Motion for Summary Judgment (Doc. 36). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants Plaintiff's motion for summary judgment.

### I. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. In applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[1] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4] The facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[5] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[6]

The moving party must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8] To prevail on a motion for summary judgment on a claim

---

[1] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[2] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[3] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[6] Fed. R. Civ. P. 56(c)(4).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams*, 233 F.3d at 1246 (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10] The nonmoving party may not simply rest upon its pleadings to satisfy this burden.[11] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II.   Undisputed Facts

The following material facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Defendant as the nonmoving party.

---

[9] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[10] *Anderson*, 477 U.S. at 256; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Celotex*, 477 U.S. at 324.

[11] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71; *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[13] *Adams*, 233 F.3d at 1246 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.3d 1022, 1024 (10th Cir. 1992)).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

On June 7, 2020, Raul Martinez negligently caused a motor-vehicle collision in Dickinson County, Kansas involving Robert Bartholic and Mark Brown. Bartholic was injured and died six days later. Brown was injured and survived.

At the time of the accident, Martinez and the vehicle he was operating were insured under an automobile liability policy issued by Plaintiff, which provided bodily injury liability limits of $100,000 per person and $300,000 per accident. The insurance policy authorized Plaintiff to "investigate, negotiate, and settle any claim," and required Plaintiff to defend any covered suit brought against Martinez and to pay the expenses it incurred in defending or settling claims.[16] The insurance policy contains an "other insurance" provision, which states that if a claim is also covered by one or more policies issued by other insurers, Plaintiff's liability coverage applies as excess over that other insurance. If the other policies likewise state that their coverage is excess, Plaintiff's liability is to be shared with those insurers on a pro rata basis according to applicable limits. Plaintiff did not assert that its coverage was excess to any other policy and did not invoke the policy's "other insurance" clause to reduce or avoid payment on the Bartholic claim.

On June 23, 2020, Plaintiff offered Bartholic's estate the $100,000 per-person limit to settle the claims arising from Bartholic's injuries and death. The offer was not accepted. On October 7, 2020, Josh Jacobs, an attorney representing Defendant, as an heir and as personal representative of Bartholic's estate, emailed Plaintiff to request a recorded statement from Martinez for the purpose of confirming whether any additional insurance existed. Jacobs wrote, "I received Shelter's settlement offer. I need to see if there[']s any other insurance for my

---

[16] Doc. 38-1 at 15.

4

clients. Is there anyway that I could take a recorded statement from your insured to see if he has any other insurance. If he doesn't we can wrap up the claim."[17]

Plaintiff did not object to a recorded statement. Plaintiff instructed Jacobs to coordinate the statement with Martinez's personal counsel, Jared Rose, and provided Rose's contact information.

For purposes of representing Martinez, Rose communicated primarily through Rosalba Lopez, Martinez's granddaughter. Because Martinez spoke limited English, Rose used Lopez as a translator to communicate with Martinez. Rose did not disclose to Jacobs that Lopez was serving as a translator between Rose and Martinez. Rose further testified that Martinez was willing to provide the recorded statement Jacobs requested.

Thereafter, Jacobs and Rose asked Plaintiff to pay for a translator and a court reporter for Martinez's recorded statement. Plaintiff declined to pay either expense. Jacobs testified that a recorded statement can be taken without a court reporter and can be recorded by any means, including a camcorder or tape recorder. Jacobs further testified that he has a contingency-fee agreement with Defendant and the Bartholic family for his representation, under which Jacobs's firm pays case-related expenses and is reimbursed from any settlement, jury verdict, or monetary award, and that when depositions or statements have required a translator in the past, his firm has paid that cost as an expense to be reimbursed from any recovery at the end of the case. No recorded statement of Martinez was ever taken.

Meanwhile, Plaintiff proceeded with its claims investigation. Plaintiff assigned Lisa Haverkamp as the claims adjuster on Bartholic's claim. As part of the claims investigation process, claims adjusters are tasked with determining whether the insured has other insurance

---

[17] Doc. 38-3.

5

applicable to the claim. In conducting her investigation, Haverkamp did not take a recorded statement from Martinez and did not ask him whether he had other insurance. Haverkamp testified that investigations into the existence of other insurance are performed to allocate liability among insurers under the insurance policy's "other insurance" provision. Haverkamp further testified that a recorded statement was unnecessary for Bartholic's claim because Plaintiff had already accepted full liability and offered its policy limits.

During this same period, Jacobs simultaneously represented Brown for claims arising from the same accident. On November 12, 2020, Jacobs sent a demand letter to Plaintiff on behalf of Brown demanding payment of the $100,000 policy limit to settle Brown's claim and stated that, as a condition to the offer, Martinez would need to execute an affidavit of no other insurance coverage. Jacobs testified that, for Brown, such an affidavit would have been sufficient to investigate other insurance. Jacobs did not request from Plaintiff an affidavit regarding other insurance for Bartholic's claim. When asked why he sought an affidavit for Brown but a recorded statement for Bartholic, Jacobs declined to answer, asserting attorney-client privilege. Plaintiff also did not offer to provide an affidavit from Martinez or any alternative to a recorded statement regarding the existence of other insurance for Bartholic's claim.

On November 23, 2020, Defendant filed a wrongful-death action against Martinez in the District Court of Dickinson County, Kansas. Plaintiff provided a defense to Martinez in that suit through attorney Craig Blumreich. After the suit was filed, Defendant never demanded nor offered to settle Bartholic's claim for $100,000 or less. Furthermore, Plaintiff never withdrew its $100,000 offer and never offered less than its policy limits to settle Bartholic's claim.

While the wrongful-death action was pending, Plaintiff separately reached an agreement with Brown to settle his claims arising from the accident for $30,000.  During this period, Martinez passed away.  The state court appointed Lewis Leflar as the administrator of Martinez's estate, and the litigation proceeded in the estate's name.  In the wrongful-death action, Defendant served discovery on Martinez in January 2021 to determine whether Martinez had other insurance, and responses were not provided until August 2021.

On July 16, 2023, Plaintiff, Defendant, and Leflar executed a written settlement agreement resolving Bartholic's wrongful-death claim.  Under the settlement agreement, Plaintiff paid Defendant $100,000 in exhaustion of the insurance policy's per-person bodily-injury limit attributable to Bartholic's injuries and death.  Following court approval of the settlement agreement, Defendant dismissed the underlying action.  The dismissal terminated the state litigation without the entry of judgment against Martinez or his estate.

The settlement agreement contains a stipulated-damages provision and a conditional-payment clause.  The parties stipulated that total damages attributable to Bartholic's injuries and death are $1.5 million.  The settlement agreement further provides that if a court later adjudicates that Plaintiff breached its implied contractual duties of reasonable care and good faith in handling Bartholic's claims and that such a breach caused the claims not to be settled prior to the entry of the settlement agreement, then Plaintiff will pay Defendant the stipulated damages amount less the $100,000 Plaintiff already paid.  The settlement agreement also provides that if there is no such adjudication, Plaintiff will have no further liability beyond the $100,000 payment made under the agreement.

After the settlement and dismissal of the underlying action, Plaintiff filed this declaratory judgment action seeking a determination that it did not breach its implied contractual duties to

7

act with reasonable care and in good faith when handling Bartholic's claim and thereby cause those claims not to be settled prior to the entry of the parties' settlement agreement.

## III. Discussion

The parties agree that in this diversity case, the Court must apply Kansas state law. In the absence of clear authority from the Kansas Supreme Court, this Court must predict how the Kansas Supreme Court would rule on the issue.[18] To do this, the Court is to look to "analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority."[19]

Under Kansas law, an insurer owes its insured two legal duties when handling third-party liability claims against the insured: the duty to act with reasonable care and the duty to act in good faith.[20] An insurer's failure to fulfill its implied contractual duties to act with reasonable care and in good faith gives rise to an action for breach of contract, rather than an action in tort, because an insurance policy is typically a contract.[21] Even so, Kansas law applies tort concepts to evaluate whether an insurer has breached the implied contractual duties to act with reasonable care and in good faith.[22] For an insurer to be liable for a judgment exceeding the coverage limits under the policy of insurance, there must be a causal link between the insurer's breach of duty and the excess judgment.[23]

---

[18] *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

[19] *First State Bank v. Daniel & Assocs., P.C.*, 519 F. Supp. 2d 1157, 1160–61 (D. Kan. 2007) (citing *MidAmerican Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006)).

[20] *Granados v. Wilson*, 523 P.3d 501, 504 (Kan. 2023).

[21] *Id.*

[22] *Id.*

[23] *Id.*

### A. Duty

The parties do not dispute that Plaintiff owed its insured, Martinez, the implied contractual duties of reasonable care and good faith in handling Bartholic's claim arising from the June 7, 2020 collision. The parties disagree, however, about the scope of those duties. Plaintiff argues its duties to Martinez did not encompass confirming the existence of other insurance or paying Defendant's costs for a court reporter or translator to take Martinez's recorded statement. Defendant argues that Plaintiff's duties of reasonable care and good faith required Plaintiff to complete an inquiry into the existence of other available insurance and to take reasonable steps to facilitate the requested recorded statement.

While some courts have previously analyzed this type of issue by asking whether an insurer owed a specific, discrete duty as part of its implied duties of reasonable care and good faith,[24] the Kansas Supreme Court has made clear that insurer obligations are not divided into separate, particularized duties.[25] The court explained that an insurer has no "specific, discrete legal duty to settle (or to investigate, evaluate, or communicate). An insurer's specific conduct surrounding settlement strategy may (or may not) breach the insurer's general legal duties, but that determination is for the fact-finder to make under all the circumstances of each case."[26] Consistent with that approach, the court cautioned that "duty rules are not meant to be fact specific," and "[w]hen duties are framed narrowly and in a particularized fashion, the element of legal duty is conflated with the element of breach."[27]

---

[24] *See Roberts v. Printup*, 422 F.3d 1211, 1216 (10th Cir. 2005) (holding an insurer has no duty to initiate settlement negotiations prior to a claim being made); *Blann v. Rogers*, 22 F. Supp. 3d 1169, 1178–80 (D. Kan. 2014) (describing discrete duties to investigate, evaluate, communicate, and negotiate).

[25] *Granados*, 523 P.3d at 508–10.

[26] *Id.* at 512.

[27] *Id.* at 510.

Consistent with *Granados*, the Court will not decide, as a matter of law, whether Plaintiff's duties to Martinez contained specific duties to confirm the existence of other insurance or to pay for a translator or court reporter.  Instead, the Court considers whether, viewing the record and reasonable inferences in the light most favorable to Defendant, a reasonable factfinder could conclude that Plaintiff's handling of Bartholic's claim breached its implied duties of reasonable care and good faith.

**B. Breach**

Under Kansas law, a breach of an insurer's implied duties of reasonable care and good faith turns on whether an insurer fails to "conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, with no policy limits applicable to the claim."[28]  "Something more than mere error of judgment is necessary to constitute bad faith."[29]  In *Bollinger*, the Kansas Supreme Court listed the following factors that courts should consider in determining whether an insurer's conduct constitutes a breach of its duty to exercise good faith:

> (1) the strength of the injured claimant's case on the issues of liability and damages; (2) attempts by the insurer to induce the insured to contribute to a settlement; (3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; (4) the insurer's rejection of advice of its own attorney or agent; (5) failure of the insurer to inform the insured of a compromise offer; (6) the amount of financial risk to which each party is exposed in the event of a refusal to settle; (7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and (8) any other factors tending to establish or negate bad faith on the part of the insurer.[30]

---

[28] *Bollinger v. Nuss*, 449 P.2d 502, 511 (Kan. 1969).

[29] *Id.* at 514.

[30] *Id.* at 512.

The list of factors is neither exclusive nor necessarily pertinent in every case.[31]  Although the existence of a breach is a question of fact,[32] summary judgment remains appropriate where the undisputed record would not permit a reasonable factfinder to find a breach.[33]

As a threshold matter, several *Bollinger* factors are not pertinent on this record: there is no evidence that Plaintiff rejected the advice of its attorneys, sought to induce Martinez to contribute to settlement, failed to convey a compromise offer to Martinez, or was misled by Martinez such that it rejected a compromise offer.  With those factors set aside, the Court focuses on the factors relating to the strength of the injured claimant's case, the insurer's failure to properly investigate, and "other factors" establishing or negating bad faith.

First, the factor relating to the strength of the injured claimant's case does not indicate breach.  It is undisputed that Martinez negligently caused the collision and that Bartholic died six days later.  Plaintiff responded accordingly by promptly admitting liability and offering its full per-person policy limits within sixteen days of the accident, without disputing fault or coverage.  Furthermore, Plaintiff never withdrew or reduced that offer.

Nor does the factor concerning the insurer's failure to properly investigate indicate breach.  Defendant argues that Plaintiff (i) failed to complete its own investigation into whether Martinez had other insurance and (ii) failed to require Martinez to give a recorded statement as part of Plaintiff's normal investigation.  Defendant relies on the insurance policy's "other insurance" provision and on Haverkamp's deposition testimony that she neither took a recorded statement from Martinez nor asked him whether he had other insurance.  Defendant's argument is unavailing for several reasons.  First, Haverkamp testified that any investigation into the

---

[31] *Wade v. EMCASCO Ins.*, 483 F.3d 657, 667 (10th Cir. 2007).

[32] *Granados*, 523 P.3d at 509.

[33] *See Wade*, 483 F.3d at 670–71; *Kemp v. Hudgins*, 133 F. Supp. 3d 1271, 1289–93 (D. Kan. 2015).

11

existence of other insurance is made pursuant to the policy's "other insurance" clause, which allocates priority and apportionment among insurers by determining whether Plaintiff's policy responds on a primary or excess basis and, where concurrent coverage exists, how any loss is shared among insurers. The "other insurance" provision operates to benefit *Plaintiff*, not Martinez or third-party claimants.[34] Second, because Plaintiff accepted liability and did not seek to treat its coverage as excess, any inquiry into the existence of other insurance was immaterial to Plaintiff's investigation. Finally, Haverkamp testified that taking a recorded statement was unnecessary in this case because Plaintiff had already accepted full liability and offered its policy limits. Accordingly, this factor does not create a genuine issue of material fact concerning breach.

In considering "other factors" tending to establish or negate bad faith under *Bollinger*, the Court first turns to the issue of Plaintiff's failure to pay for the requested court reporter and translator. The undisputed record reflects that (i) Plaintiff did not object to Jacobs's request to take Martinez's statement and attempted to facilitate it by providing Martinez's personal counsel's contact information; (ii) a court reporter was not necessary to take a recorded statement and the statement could be recorded by any reasonable means; (iii) when translation services have been needed for statements or depositions in the past, Jacobs's firm treated it as an expense to be reimbursed at the end of a case from any recovery; (iv) Martinez's own personal counsel has used Martinez's English-speaking granddaughter, Rosalba Lopez, to communicate with Martinez, demonstrating a practical, no-cost avenue for translation; and (v) in the related Brown

---

[34] *See Bedivere Ins. v. Blue Cross & Blue Shield of Kan., Inc.*, 491 F. Supp. 3d 929, 941 (D. Kan. 2020) (explaining that "other insurance" clauses allocate liability among insurers and generally do not affect an insurer's obligations to its policyholder).

claim arising from the same accident, Jacobs accepted an affidavit confirming the existence of no other insurance.

Plaintiff relies on *Kemp v. Hudgins*,[35] to argue that its refusal to pay for the additional costs of the court reporter and translator did not amount to a breach of its duties. In *Kemp*, this Court found that an insurer had not breached its duties because there was "no dispute that [the insurer] offered its policy limits . . . . [And] did not delay its policy limits offer in order to obtain more information, and it never contested that [the insured] was the at-fault party, or that he was the 'insured' under the policy."[36] The dispute in *Kemp* centered on whether a policy-limits settlement had to include a release of both insureds.[37] The claimant insisted on releasing only one insured; the insurer refused and conditioned payment on a release of both insureds. This Court held that "[t]here was no bad faith in refusing to accept a settlement offer that required additional consideration, beyond the policy limits, for the release of both insureds."[38]

Similar to the facts in *Kemp*, here it is undisputed that Plaintiff offered its policy limits within sixteen days of the accident, never reduced or withdrew that offer, did not dispute fault or coverage, and attempted to facilitate Jacobs's request to take Martinez's recorded statement by providing Martinez's counsel's contact information. On this record, Plaintiff's refusal to pay for a court reporter and translator for Jacobs's own investigation into the existence of other insurance, like the additional terms rejected in *Kemp*, does not amount to bad faith, because there

---

[35] 133 F. Supp. 3d 1271 (D. Kan. 2015).

[36] *Id.* at 1292–93.

[37] *Id.* at 1289–93

[38] *Id.* at 1293.

13

is "no bad faith in refusing to accept a settlement offer that required additional consideration, beyond the policy limits."[39]

Nonetheless, Defendant argues that two circumstances in the record create genuine issues of material fact as to whether Plaintiff breached its implied duties of reasonable care and good faith. Defendant points to evidence that (i) Plaintiff failed to offer an affidavit or other alternative to a recorded statement regarding the existence of other insurance, and (ii) Plaintiff failed to timely respond to January 2021 discovery requests in the underlying wrongful-death action about the existence of other insurance.

As to Plaintiff's failure to offer alternatives to a recorded statement, the record does not support Defendant's contention. There is no evidence that Jacobs would have accepted any alternative, or that it would have been reasonable for Plaintiff to believe so, particularly where Jacobs expressly conditioned resolution of Bartholic's claim on a recorded statement to confirm the absence of other insurance and specified that it be taken with a court reporter and a translator at Plaintiff's expense. Treating Plaintiff's omission to propose an unrequested alternative as bad faith would penalize an insurer "acting honestly and in good faith upon adequate information" for failing "to prophesy the result,"[40] and Kansas law makes clear that an "error of judgment is not sufficient to show bad faith."[41] On these facts, no reasonable juror could conclude that Plaintiff's failure to propose an alternative to a recorded statement constituted even a mere error in judgment, let alone a breach of its implied duties of reasonable care and good faith.

As to the discovery issue, the record shows that in January 2021, Defendant served discovery requests in the underlying action on Martinez, not on Plaintiff, to determine whether

---

[39] *Id.*

[40] *Glenn v. Fleming*, 799 P.2d 79, 85 (Kan. 1990).

[41] *Kemp*, 133 F. Supp. 3d at 1292 (citing *Glenn*, 799 P.2d at 85).

14

Martinez had other insurance, and that Martinez's counsel did not respond until August 2021. Plaintiff retained Blumreich to defend Martinez in the underlying action. Therefore, Defendant's theory necessarily requires that Blumreich's litigation conduct in the underlying action be imputed to Plaintiff.

"Kansas law requires an insurer to provide a defense to an insured if there is a potential for liability under the policy."[42] Where there is a potential excess exposure to an insured, the insurer has a duty to provide independent counsel whose legal responsibility is to the insured.[43] The general rule in Kansas is that merely hiring an attorney to represent an insured will not make the insurer vicariously liable for the attorney's negligence.[44] Kansas also recognizes, however, that the attorney-client relationship is grounded in agency principles,[45] and that "an attorney hired by an insurer to represent an insured can be considered an agent of the insured, making the insurer vicariously liable for the attorney's actions—if, at the time in question, the attorney's acts or omissions were directed, commanded, or knowingly authorized by the insurer."[46] "When there are facts to demonstrate that the attorney violated these rules and allowed the insurer to direct or control the attorney's actions in defending the insured, the attorney likely will be

---

[42] *Davin v. Athletic Club of Overland Park*, 96 P.3d 687, 690 (Kan. Ct. App. 2004) (citing *State Farm Fire & Cas. Co. v. Finney*, 770 P.2d 460, 466 (Kan. 1989)).

[43] *Patrons Mut. Ins. Ass'n v. Harmon*, 732 P.2d 741, 745 (Kan. 1987); *Aselco, Inc. v. Hartford Ins. Grp.*, 21 P.3d 1011, 1020 (Kan. Ct. App. 2001).

[44] *Pac. Emp'rs Ins. v. P.B. Hoidale Co.*, 789 F. Supp. 1117, 1122 (D. Kan. 1992) (citing *Bell v. Tilton*, 674 P.2d 468 (Kan. 1983)).

[45] *Id.* (citing *Prof'l Serv. Indus. v. Kimbrell*, 758 F. Supp. 676, 681 (D. Kan. 1991)).

[46] *Hackman v. W. Agr. Ins.*, 275 P.3d 73 (Table), 2012 WL 1524060, at *16 (Kan. Ct. App. April 20, 2012) (citing *P.B Hoidale Co.*, 789 F. Supp. at 1122); *see Bell v. Tilton*, 674 P.2d 468, 472 (Kan. 1983) ("The mere fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company.").

considered the agent of the insured and, in turn, the insurer may be held vicariously liable for the attorney's negligent conduct."[47]

Here, assuming *arguendo* that Blumreich acted in bad faith in failing to timely respond to the January 2021 discovery request, there is no evidence from which a jury could reasonably conclude that Plaintiff exercised direction or control over Blumreich's legal judgment—or correspondingly, that Blumreich allowed his legal judgment to be compromised or influenced by Plaintiff—in litigating the underlying suit or handling the January 2021 discovery request. There is no evidence that Plaintiff placed limitations, financial or otherwise, on Blumreich's authority to marshal a defense, and no evidence that Plaintiff directed him to utilize a particular method or strategy in responding to discovery requests.

Defendant relies primarily on a February 14, 2022 letter from Martinez's personal attorney, Rose, addressed to Blumreich and Haverkamp, reciting that Haverkamp had "on December 1, 2021" emailed Rose and stated that "Craig Blumreich is our counsel on this file and as such will be responding on behalf of Shelter Insurance," and complaining that discovery questions provided to "Shelter's lawyer in January 2021" were not provided to Martinez until June 2021.[48] Defendant also cites Rose's deposition, which merely discusses the same letter. None of this establishes the requisite level of insurer control. Identifying appointed defense counsel as "our counsel on this file" reflects nothing more than Plaintiff's retention of counsel to defend Martinez; it does not show that Plaintiff directed the timing or substance of discovery responses, regulated Blumreich's professional judgment, or otherwise dictated litigation strategy. As such, Defendant has not adduced evidence from which a reasonable factfinder could find that

---

[47] *Hackman*, 2012 WL 1524060, at *16.

[48] Doc. 41-5.

16

Plaintiff directed, commanded, or knowingly authorized the alleged delay. Accordingly, the January–August 2021 discovery-timing issue does not create a triable issue of breach by Plaintiff.

Therefore, after considering the totality of the circumstances under the *Bollinger* factors and viewing the record in the light most favorable to Defendant, the Court finds that there is no genuine issue of material fact, and no reasonable jury could conclude that Plaintiff breached its implied duties of reasonable care and good faith.

### C. Causation

Even if, after weighing the *Bollinger* factors, there was a genuine issue of material fact as to whether Plaintiff breached its implied duties to act with reasonable care and good faith, no reasonable jury could conclude that Plaintiff's conduct caused Defendant's claims not to be settled prior to the entry of the parties' settlement agreement. The parties agree that, under Kansas law, there must be a "causal link" between Plaintiff's conduct and the fact that a settlement agreement was not reached earlier.[49] To establish causation, it must be shown that, but for Plaintiff's conduct, an earlier within-limits settlement would have been reached.[50]

Here, no reasonable jury could conclude that, but for Plaintiff's conduct, Bartholic's claim would have settled within the policy limits before entry of the parties' settlement agreement. On June 23, 2020, sixteen days after the collision, Plaintiff admitted liability and offered the $100,000 per-person limit. Plaintiff never withdrew or reduced that offer. It was not until October 7, 2020, several months later, that Jacobs acknowledged receipt of the offer and asked to take a recorded statement of Martinez to determine whether any other insurance existed,

---

[49] *Granados v. Wilson*, 523 P.3d 501, 514 (Kan. 2023).

[50] *See id.* at 515.

stating that if none did, then "we can wrap up the claim."[51] Plaintiff did not object and even attempted to facilitate the request by providing Jacobs with contact information for Martinez's personal counsel.

The impasse arose only after Jacobs and Rose requested that Plaintiff pay for a court reporter and translator for the recorded statement, despite the fact that Jacobs admitted that a court reporter is unnecessary to take a recorded statement. The record also shows that Rose routinely communicated with Martinez through his English-speaking granddaughter, who could have served as a translator, and when translation services have been needed for statements or depositions in the past, Jacobs's firm treated it as an expense to be reimbursed at the end of a case from any recovery. Importantly, Jacobs specifically requested an affidavit from Martinez confirming no other insurance to settle Brown's claim, but insisted on a recorded statement with a court reporter and translator for Bartholic's claim and invoked the attorney-client privilege when asked why an affidavit would not suffice. On these facts, any failure to reach an earlier within-limits resolution resulted from the arbitrary conditions Defendant chose to impose, not from Plaintiff's conduct.

Defendant's additional arguments—that Plaintiff failed to propose alternatives to a recorded statement, delayed discovery responses, and did not conduct its own investigation into other insurance—do not alter this conclusion. As previously discussed, any failure by Plaintiff to offer an alternative did not cause the failure to reach an earlier limits resolution because the record contains no evidence that Jacobs would have accepted anything other than the specific

---

[51] Doc. 38-3.

recorded statement he demanded.[52]  The discovery delay is immaterial to the causation issue because, even if Blumreich's untimely discovery responses caused the parties not to settle earlier, there is no evidentiary basis to impute his litigation conduct to Plaintiff.  Furthermore, Plaintiff's decision not to conduct its own separate investigation into whether Martinez had other insurance is likewise immaterial to causation because, as Haverkamp explained, such investigations are undertaken to determine priority and apportionment among insurers for the insurer's own purposes.

As such, there is no genuine issue of material fact, and no reasonable jury could conclude that Plaintiff's conduct caused Bartholic's claims not to be settled prior to the entry of the parties' settlement agreement.  Accordingly, the Court grants Plaintiff's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Shelter Mutual Insurance Company's Motion for Summary Judgment (Doc. 36) is **granted**.  The Clerk is directed to enter judgment in favor of Plaintiff Shelter Mutual Insurance Company.

**IT IS SO ORDERED.**

Dated: September 15, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[52] *See Granados*, 523 P.3d at 515–16 (finding no causal link where the record contained no evidence of how the insured would have responded to advice about excess exposure, so any conclusion that an earlier within-limits settlement would have occurred was speculative).